```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| **WALTER BLOCK** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2200** |
| **THE NEW YORK TIMES COMPANY, ET AL.** | **SECTION "B"(4)** |

## ORDER AND REASONS

### I.   NATURE OF THE MOTION AND RELIEF SOUGHT

Before the Court is a "Special Motion to Strike" by defendants, the New York Times Company, Sam Tanenhaus, and Jim Rutenberg.[1] Plaintiff has filed a response in opposition.[2] Defendants have filed a reply.[3] The motion, set for submission on April 22, 2015 is before the Court, on the pleadings, without oral argument. Accordingly, and for the reasons enumerated below,

**IT IS ORDERED** that the Special Motion to Strike is **GRANTED**. **IT IS FURTHER ORDERED** that the defendants be awarded reasonable attorney fees and costs, in accordance with Louisiana Code of Civil Procedure Article 971(C). This issue will be referred to the Magistrate Judge for resolution.

---

[1] Rec. Doc. No. 10.
[2] Rec. Doc. No. 17.
[3] Rec. Doc. No. 20.

1

**II.   BACKGROUND**

On or about January 25, 2014, the New York Times Company published an article entitled "Rand Paul's Mixed Inheritance" in the New York Times Newspaper.[4] The article was co-authored by defendants, Sam Tanenhaus and Jim Rutenberg.[5] In this lawsuit, the plaintiff, Walter Block ("plaintiff" or "Block") contends that the article defamed him and placed him in a false light. The article provides an in-depth examination of the political philosophy endorsed by U.S. Senator Rand Paul and contains a paragraph which reads:

> Walter Block, an economics professor at Loyola University in New Orleans who described slavery as "not so bad," is also highly critical of the Civil Rights Act. "Woolworth's had lunchroom counters, and no blacks were allowed," he said in a telephone interview. "Did they have a right to do that? Yes, they did. No one is compelled to associate with people against their will.["][6]

The article contains an earlier sentence plaintiff claims references him, and which reads as follows:

> One economist, while faulting slavery because it was involuntary, suggested in an interview that the daily life of the enslaved was "not so bad- you pick cotton and sing songs."[7]

---

[4] Rec. Doc. No. 1 at 3.
[5] Rec. Doc. No. 1 at 3.
[6]  Rec. Doc. No. 1 at 3.
[7] Rec. Doc. No. 1 at 3.

2

The plaintiff submits that the statements made and quoted are untrue, defamatory and have caused him damages.[8] Plaintiff claims that the quotations are taken out of context to give the impression that plaintiff is a racist, a supporter of slavery, and/or against the Civil Rights Act of 1964 solely because of racial prejudices.[9] Plaintiff filed this diversity suit asserting claims for defamation and false light invasion of privacy.

The defendants have filed a special motion to strike under article 971 of the Louisiana Code of Civil Procedure. Defendants argue that, pursuant to article 971, a defendant may move to strike claims that arise from the exercise of First Amendment rights. Further, plaintiff cannot prove a "probability of success" on his claims and overcome such a motion. Defendants urge the dismissal of the complaint, and an award of attorney's fees and costs.

III. **LAW AND ANALYSYS**

    a. *Standard of Law: Special Motion to Strike under La. Code Civ. P. art. 971*

In a diversity action such as this one, "Louisiana law, including the nominally-procedural Article 971" governs. *Brown v. Wimberly,* 477 F. App'x 214, 216 (5th Cir. 2012); *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 168-69 (5th Cir.

---

[8] Rec. Doc. No. 1 at 3.
[9] Rec. Doc. No. 1 at 4.

2009). The law is Louisiana's anti-SLAPP procedure, enacted to address a "strategic lawsuit against public participation." *See Henry*, 566 F.3d at 169. Article 971 instructs that a plaintiff who files suit "against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" is subject to a special motion to strike. La. Code Civ. Proc. art. 971. The purpose of the special motion to strike "is to encourage continued participation in matters of public significance and to prevent this participation from being chilled through an abuse of judicial process." *Savoie v. Page*, 23 So.3d 1013, 1016 (La.App. 3 Cir. 2009)(quoting *Lamz v. Wells*, 938 So.2d 792, 796 (La.App. 1 Cir. 2006)).

Article 971 creates a burden shifting test for weeding out frivolous claims. First, the movant must make a *prima facie* showing that article 971 covers the activity underlying the suit, specifically that "the matter arises from an act in furtherance of his or her right of free speech or the right of petition and in relation to a public issue." Then, if the movant makes this showing, then the burden shifts to the plaintiff to "demonstrate a probability of successes on his or her own claim." *See Henry*, 566 F.3d at 181; *Starr v. Boudreaux*, 978

4

So.2d 384, 388-89 (La.App. 1 Cir. 2007). A party prevailing under an article 971 motion to strike is entitled to reasonable attorney's fees and costs. *See* La. Code Civ. P. art. 971(b).

*b. Relation to Public Issue*

Defendants must first make a *prima facie* showing that the matter arises from an act in furtherance of their right to free speech or the right of petition and in relation to a public issue. *Darden v. Smith*, 879 So.2d 390, 395 (La. App. 3 Cir. 6/30/04). The United States Supreme Court has defined matters of "public concern" as speech "relating to any matter of political, social or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983).

It is undisputed that Block's claims arise out of the publication of a New York Times article, which undoubtedly constitutes an exercise of free speech. Defendants contend the article relates to a public issue as it discusses the "intellectual forces shaping the political views of a United States Senator and potential candidate [Rand Paul] for president," and "asks whether that philosophy will impact Paul's viability as a presidential candidate."[10]

---

[10] Rec. Doc. No. 10-1 at 5.

5

The Court finds the article's stated purpose presents an issue of public concern. The article not only focuses on the senator and presidential candidate, but also analyzes the background and status of libertarian political ideology in the United States. The article details the ideology's origins and explores the various views of its adherents, past and present, in order to provide points of reference for comparing and contrasting the presidential candidate.

Although Block is not expressly identified as an adherent of the ideology within the article, Block has self-identified as a libertarian, and the article utilizes his statements to exemplify certain views and criticisms held by libertarians.[11] Thus, the publication of the article, containing statements by and references to Block, constitutes an act in furtherance of the right of free speech under the United States or Louisiana Constitution in connection with a public issue. The Article 971 special motion to strike is, therefore, available to the defendants here.

---

[11] "Compelling Woolworths to seat blacks is thus incompatible with libertarianism. It was a violation of their private property rights over their establishment. Free association is a very important aspect of liberty...Otherwise slavery wasn't so bad. You could pick cotton, sing songs, be fed nice gruel, etc. The only real problem was that this relationship was compulsory." Rec. Doc. No. 10-7 at 1 (Exhibit B). *Chris Selley is a Pussy Libertarian; I'm Not*, Walter E. Block. (February 25, 2013).

*c. Probability of Success*

**1. Defamation Claim**

The next issue is whether Plaintiff can establish a probability of success on the defamation and false light claims. Defamation is a tort involving an invasion of a person's interest in his reputation and good name. *Brungardt v. Summitt*, 7 So.2d 879, 885 (La. App. 4 Cir. 2009). To succeed on a defamation claim in Louisiana, the plaintiff must establish: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) malice (actual or implied); (4) fault (negligence or greater on the part of the publisher); and (5) resulting injury. *Henry*, 566 F.3d at 182 (quoting *Kennedy v. Sherriff of East Baton Rouge*, 935 So.2d 699, 674 (La. 2006)); *Trentecosta v. Beck*, So.2d 552 (La. 2007). If one element of defamation is lacking, the claim cannot prevail.

A statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. *Kennedy*, 935 So.2d at 675. Whether a particular statement is objectively capable of having a defamatory meaning is a legal issue to be decided by the court, considering the statement as a whole, the context in which it

was made, and the effect it is reasonably intended to produce. *Lamz v. Wells*, 938 So.2d 792, 798 (La.App. 1 Cir. 6/9/06).

A statement is defamatory *per se* if it accuses another of criminal conduct or tends to injure one's reputation without considering extrinsic facts or circumstances. *Id*. When words are defamatory *per se*, the falsity, malice and injury elements are presumed, but may be rebutted. The negligence standard applies as the measure of fault of the defendants. *Kennedy*, 935 So.2d at 681. Thus, plaintiff must show that, at the least, the defendants acted negligently in failing to ascertain the false and defamatory nature of the statements. *See* Restatement 2d Torts § 580(B).

Block takes issue with the following:

One economist, while faulting slavery because it was **involuntary**, suggested in an interview that the daily life of the enslaved was "not so bad- you pick cotton and sing songs."

Walter Block, an economics professor at Loyola University in New Orleans who described slavery as "not so bad," is also highly critical of the Civil Rights Act. "Woolworth's had lunchroom counters, and no blacks were allowed," he said in a telephone interview. "Did they have a right to do that? Yes, they did. No one is compelled to associate with people against their will."

Plaintiff argues that the statements are untrue, defamatory, and taken out of context to give the impression that

8

he is a racist, a supporter of slavery, and/or against the Civil Rights Act of 1964 ("Act") solely because of racial prejudices.[12] Plaintiff claims that in addition to other injury, the defamation has caused him to lose esteem with students and colleagues at Loyola University, where he is employed.

Plaintiff however, does not deny making the statements attributed to him. In fact, the first quote, which can be found in a blog post by Block, was made by him during a telephone interview with defendants.[13] The second text refers back to the first quote and contains substantially similar quotes obtained during the same interview.[14] Although Block claims in the Original Complaint that the statements about him and quoted are untrue, he acknowledges having made them, and thus cannot establish the most important element, falsity, which in turn precludes him from establishing malice. Similarly, as Block is quoted directly, he fails to demonstrate 'facts and circumstances' defendants have failed to consider, such that they were negligent, and the references could be considered defamatory *per se*. The publication of an article accusing Block of being racist could be viewed as defamatory *per se*. However, the article does not state that Professor Block is a racist, a

---

[12] Rec. Doc. No. 1 at 3-4.
[13] *Supra* note 10 and accompanying text.
[14] Rec. Doc. No. 10-3 at 1, Declaration of Sam Tanenhaus. "As part of my research for the article, I interviewed Professor Walter Block, the plaintiff in this lawsuit. The statements that the article attributes to Professor Block are statements that Professor Block personally made to me during the interview."

9

supporter of slavery, or even that he opposes the Act on the basis of racial prejudice.

What Plaintiff really takes issue with is the context in which his quotes were used. However, neither of defendants' statements is capable of defamatory meaning. To reiterate, the article quotes Block directly. The context itself does not rationally lead to an impression that Professor Block is racist, or a supporter of slavery who objects to the Act on the basis of racial prejudice. The fact that some may interpret the article that way does not contravene this point. The article makes clear that Block: (1) objects to slavery on principle as involuntary, and (2) objects to the Act on the basis of the constitutional right to be free from association.[15] While the article raises certain provocative views, in the context of the article as a whole, Block is portrayed as an economist who supports limited government.[16]

In fact, the paragraph that directly follows the second block of text clarifies: "Rand Paul has offered a similar critique [of the Act]. Such arguments derive from an economic precept embraced by many libertarians: Government should not

---

[15] The separate statements operate together; Plaintiff cannot argue on the one hand that the second omits his objection to slavery as forced labor, while arguing on the other, that each statement should be read within the context of the entire article.

[16] Perceptions about Block's notions of race related issues were largely fueled by and published by Block himself. In this regard, Block cannot complain about resulting perceptions of insensitivity and levity on serious issues like slavery.

impede the free flow of commerce or dictate the personal or business transactions of citizens."[17] The text, taken to its extreme, would merely support an accusation that Block supports free enterprise at all costs, which is not the defamation complained of here.

Moreover, to the extent Block objects to the article as a whole for placing his statements out of context, "[t]ruthful facts which carry a defamatory implication can only be actionable if the statements regard a private individual *and* private affairs." *Schaefer v. Lynch*, 406 So.2d 185, 188 (La. 1981). An otherwise private individual, who voluntarily injects himself into a matter of public concern, is a public figure for the limited issues involved. *Starr*, 978 So.2d at 391. "Where public [figures] and public affairs are concerned, there can be no libel by innuendo." *Id*. This is so, "[e]even though a false implication may be drawn by the public." *Id*. To prevail in an action based on defamatory implications rather than defamatory words, the plaintiff must prove that the alleged implication is the principal inference a reasonable reader will draw from the publication as having been intended by the publisher. *Sasssone v. Elder*, 626 So.2d 345 (La. 1993). Again, considering the article as a whole, the Court concludes that this is not the case.

---

[17] Rec. Doc. No. 10-4 at 9 (Exhibit A), *Rand Paul's Mixed Inheritance*.

Lastly, in such a case involving a matter of public concern, a plaintiff must prove *actual malice*, as well as the other elements of his defamation claim, in order to prevail. *Starr*, 978 So.2d at 392. From a review of the record, the Court finds no evidence to suggest that the defendants acted with actual malice in publishing the article. Defendants contacted Block for an interview and quoted him directly. In sum, the Court concludes that plaintiff cannot establish the requisite elements for a defamation claim: falsity, defamatory, and actual malice, and thus cannot overcome the instant motion to strike.

**2. False Light Claim**

A false light invasion of privacy claim "arises from publicity which unreasonably places the plaintiff in a false light before the public." *Perere v. Louisiana Television Broadcasting Corp.*, 812 So.2d 673, 676 (La.App. 1 Cir. 9/28/01). Block must prove that there existed a privacy interest, falsity and unreasonable conduct or serious invasion of privacy. *Stern v. Doe*, 806 So.2d 98, 101 (La.App. 4 Cir. 12/27/01)(citing *Perere,* 812 So.2d at 676). While the publicity need not be defamatory, it "must contain either falsity or fiction." *Id*.

Block has failed to show a probability of success on his defamation claim. Similarly, the claim for false light invasion of privacy must fail because he cannot demonstrate a probability

of successfully showing that the publicity placed him in a false light. Furthermore, it is not clear that plaintiff could show a serious invasion of his privacy because he interviewed with defendants for the purpose of discussing the subject matter of the article.

Although it is not necessary that there be malicious intent on the part of the defendant, the Court's analysis of Block's defamation claim thoroughly discusses whether the allegations of the Complaint satisfy the falsity element. *Id*. The Court has concluded they do not. Therefore, Block likewise cannot carry his burden to prove false light invasion of privacy because he has not stated any facts to corroborate his claim.

## IV. CONCLUSION

The Court finds the New York Times article was about a certain political ideology, libertarianism. The Court finds that the references made to Block are not capable of defamatory meaning, nor do they place him in a false light. Nothing suggests that permitting discovery would allow Professor Block to establish anything that might help him successfully oppose the defendant's motion. Accordingly,

**IT IS ORDERED** that Defendant's Special Motion to Strike is **GRANTED. IT IS FURTHER ORDERED** that the Defendant be awarded

reasonable attorney fees and costs, in accordance with Louisiana Code of Civil Procedure Article 971(C). This issue will be referred to the Magistrate Judge for resolution.

New Orleans, Louisiana, this 16th day of April, 2015.

_____
UNITED STATES DISTRICT JUDGE