UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| WALTER BLOCK | * | CIVIL ACTON NO.: 2:14-cv-2200 |
|---|---|---|
| | * | |
| VERSUS | * | |
| | * | JUDGE IVAN L.R. LEMELLE |
| THE NEW YORK TIMES COMPANY, | * | |
| SAM TANENHAUS, AND | * | |
| JIM RUTENBERG | * | MAGISTRATE KAREN WELLS ROBY |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO STRIKE FROM THE PLEADINGS
A TIMES PICAYUNE ARTICLE SUBMITTED AS EVIDENCE
IN CONNECTION WITH DEFENDANTS' SPECIAL MOTION TO STRIKE
AND ALL ARGUMENT BASED THEREUPON**

MAY IT PLEASE THE COURT:

This Court is well familiar with the facts underlying the instant dispute, so a lengthy summary is not necessary here. Rather, Professor Block confines his summary of the relevant facts to those related to the particular evidentiary item and argument based thereupon that he asserts is not admissible in this litigation and should not be considered by this Court in reaching a decision on defendants' Special Motion to Strike.

The item in question is a Times Picayune article authored by James Gill and published on November 26, 2008, which is attached to defendants' Special Motion to Strike as Exhibit "A" to the Unsworn Declaration of Lori Mince [Doc. 35-6]. It is attached and relied upon in defendants' Special Motion for the irrelevant proposition that "Professor Block has long held controversial views."[1] It is block quoted in defendants' Special Motion and the argument based upon it stretches roughly two

---

[1] Doc. 35-1 at p. 4.

and a half (2-2½) pages.[2]

Quite importantly, it is the only evidentiary support defendants submit for the following proposition(s) (quoted directly from defendants' Special Motion):

> In 2008, in a lecture at Loyola University in Baltimore, **Professor Block opined** that women and blacks earn less than white men because they are less productive. He argued that women are less productive because they are distracted by domestic chores; blacks, he suggested, may have lower IQs. Not surprisingly, Professor Block's comments "ignite[d] furor."[3]

Defendants then follow this position with the alleged support therefore (the Times Picayune article) prefacing it by writing, "In an op-ed piece, The Times-Picayune published **the following commentary** on Professor Block's comments:" – a lengthy block quote of **the author's characterization** of Professor Block's comments/opinions then follows.[4]

## SUMMARY OF THE ARGUMENT

The impropriety of this evidentiary item and the argument based thereupon is patent on the face of same.

First, there is no question that defendants submit the author's characterization of Professor Block's stated opinions on the matters described by the article for the truth of the matter asserted– *i.e.*, that Professor Block said such things and believes as such. Moreover, they actually grossly mischaracterize what the author even wrote about Professor Block's comments, but this point is more or less irrelevant to the instant Motion to Strike. It is incontestible that the author's out-of-court

---

[2]*See* Doc. 35-1 at pp. 4-6.

[3]Doc. 35-1 at p. 4 (emphasis added).

[4]Doc. 35-1 at pp. 4-5 (emphasis added).

statement purporting to be a reflection of what Professor Block said, opined or believes (also outside of court) is inadmissible hearsay because it is submitted for no other purpose than to prove the truth of the matter asserted, which is either (1) Professor Block has long held controversial views, (2) Professor Block opined that women and blacks are less productive, or (3) both. Neither the article nor the argument based thereupon should be admitted for consideration on defendants' Special Motion to Strike (nor, moreover, at the trial of this matter) for this reason alone.

Second, the article and the argument based thereupon are irrelevant because whether Professor Block holds, as defendants' suggest, "controversial views" has no bearing on any element and/or fact at issue in this litigation. The matter before this Court is simple. It is precisely whether the quotations in defendants' Article accurately reflect the meaning expressed by Professor Block to defendant-Tanenhaus during interview. In a similar case decided by the Ninth Circuit (*Price v. Stossel*), the Ninth Circuit recognized that such ancillary matters that have nothing to do with nor any bearing upon whether the quoted words accurately reflect the meaning conveyed by the speaker *when he or she spoke those words* are irrelevant. In other words, they do not tend to prove or disprove *anything at all* related to whether the misquotation and/or mischaracterization constitutes defamation or any other actionable tort. Put simply, the allegedly defamatory statements exist in a vacuum; defendants cannot urge that their statements are justified because of past viewpoints they claim Professor Block expressed that do not form the basis of nor in any way relate to the statements alleged to be defamatory or tortious.

Finally, even if the article had some tangential, yet unidentified, relevance to this litigation, such is far outweighed by the danger of unfair prejudice to Professor Block's case. As stated, the article does not tend to prove or disprove whether defendants accurately quoted Professor Block such

that they did not defame him by misrepresenting his meaning. By design, all that it does do, and all that it is meant to do, is inflame this Court against Professor Block by further unfair attempt to paint him as some kind of bigot, as if defendants' Article, itself, has not already injured him gravely in this way. Should it be considered on defendants' Special Motion to Strike or at the trial of this matter, it would undoubtedly cause severe bias against Professor Block that would be incredibly difficult to counteract. Since it has no bearing on the elements of this action or any defense thereto, there is no legal basis to subject Professor Block to such bias; indeed, the bias far outweighs any relevance the Times-Picayune article and argument based thereupon might have.

## LAW AND ARGUMENT

**I.     The Times-Picayune Article constitutes inadmissible hearsay**

As fully supported above, the Times-Picayune Article is quoted to prove the truth of the matters asserted that (1) Professor Block has long held controversial views, (2) Professor Block once opined that women and blacks are less productive than white males, and (3) that such opinions espoused by him "ignite[d] furor" (in some unidentified individuals). Out-of-court statements of a journalist purporting to be a reflection of opinions espoused by Professor Block and the result that obtained upon his publicly making such opinions known constitutes inadmissible hearsay.

Putting aside the gross distortion of Professor Block's comments and even those of the Times-Picayune reporter who purported to convey them, Federal Rule of Evidence 801, *et seq.*, requires that the article and argument based thereupon be stricken from the pleadings. Under Rule 801, "hearsay" is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in

the statement."[5] Hearsay is not admissible unless either (1) a federal statute, (2) the Federal Rules of Evidence concerning hearsay, or (3) some other rule prescribed by the U.S. Supreme Court provides otherwise.[6] The burden rests solely with the proponent of the evidentiary item to prove that an exception to Rules 801 and 802 applies.[7]

The reason such out-of-court statements, especially when they rely upon an out-of-court declarant's recollection and/or notes concerning what another person said, are inadmissible is the central premise of reliability. By way of example, as the Ninth Circuit reasoned in a somewhat related context (a notetaker's characterization as opposed to a journalist's (*i.e.*, a glorified notetaker)), "a notetaker may misunderstand particular answers or statements and make an incorrect note, or the note may be correct, but in reducing it to 'transcript', he may impose a different tone or emphasis on a statement."[8] Such concerns are undoubtedly in play here as defendants claim "**Professor Block opined** that women and blacks earn less than white men because they are less productive" and their basis for this statement in their Special Motion to Strike is an out-of-court opinion of a journalist **who says** that **this is what Professor Block stated** (putting aside that defendants even mischaracterize what the journalist said of Professor Block's alleged opinions).

It would be different if they were quoting Professor Block directly *and if Professor Block denied having made the statement quoted* because prior inconsistent statements of a party in litigation are admissible (as an exception to the hearsay rule) when used to impeach that party's

---

[5]Fed. R. Evid. 801(c).

[6]Fed. R. Evid. 802.

[7]*See, e.g., United States v. Felix-Jerez*, 667 F.2d 1297, 1299 (9th Cir. 1982).

[8]*Id.* at 1300.

testimony. But this exception cannot be applied to a third party's statement about the views expressed by Professor Block unless that third party is present in open court, attests to his having personally heard Professor Block make the statement, and is subject to cross-examination.

Thus, the Times-Picayune article and the portion of defendants' Special Motion relying thereupon is inadmissible and should be stricken. The article is submitted for the truth of the author's assertions regarding Professor Block's stated opinions and, therefore, constitutes inadmissible hearsay.

II. **In the alternative, the Times-Picayune article and argument relying thereupon should be stricken because it is not relevant to any matter at issue in this litigation**

Under Federal Rule of Evidence 401, relevance is a necessary prerequisite to the admission of any evidence in federal court and the purported evidence is only relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[9]

The Times-Picayune article in question does not meet this threshold because it has nothing to do with the allegedly defamatory quotations in defendants' Article. It does not tend to make any fact of consequence (*i.e.*, related to the elements of defamatory meaning, falsity, malice and/or injury) more or less probable. The basis for this is simple. As the Ninth Circuit noted in *Price v. Stossel*, when a court is called upon to determine whether a quotation of another individual mischaracterizes that individual's meaning such that the quotation is false and defamatory, the only matters of relevance are (1) the quotation itself; and (2) evidence establishing what the quoted individual actually said and meant because **"when dealing with material that is portrayed as a**

---

[9] Fed. R. Evid. 401.

quotation, we are to compare the quotation as published with the words the speaker actually said[,]"[10] nothing more, nothing less. In *Price*, the defendant similarly attempted to argue it should not be held liable because what was quoted was an accurate reflection of other controversial views expressed by the plaintiff in that case that did not have anything to do with the quote at issue in the litigation. The Ninth Circuit, relying upon controlling U.S. Supreme Court jurisprudence (*Masson v. The New Yorker Magazine*), observed that such a comparison is completely irrelevant for that very reason– it has nothing to do with whether the quotation alleged to be defamatory was a false mischaracterization of the speaker's meaning behind the words when spoken.[11]

Thus, even if the Times-Picayune article did not constitute inadmissible hearsay, it should be excluded as lacking any relevance to this litigation. Given the foregoing argument and jurisprudence, the burden is upon defendants to show that the article not only fits within a hearsay exception, but also is relevant to a matter of consequence in this litigation. Professor Block submits they cannot do so because regardless of their feeling that Professor Block "has long held controversial views[,]" whether he has or has not is completely irrelevant to this defamation action.

### III. In the further alternative, the danger of unfair prejudice to Professor Block's case far outweighs any tangential relevance (if any) the Times-Picayune article may have

Under Federal Rule of Evidence 403, otherwise relevant evidence should be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

---

[10]*Price v. Stossel*, 620 F.3d 992, 995 (9th Cir. 2010).

[11]*Id.* (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 502, 111 S. Ct. 2419, 2425, 115 L. Ed. 2d 447 (1991)).

presenting cumulative evidence."[12] Professor Block can divine no relevance of any kind the Times-Picayune article might have. But even if same exists, it is undoubtedly outweighed by the danger of unfair prejudice to his case that its admission will undoubtedly visit upon him.

Quite simply, the Times-Picayune article says **absolutely nothing** about Professor Block's views on slavery. That is all that is at issue in this litigation– whether defendants accurately conveyed Professor Block's stated opinions regarding the evil(s) **of slavery**. This Times-Picayune article is submitted by defendants in an attempt only to further impugn Professor Block's character by painting him as some kind of bigot who often offends people by publicly espousing his views on race and gender issues. That is, it is little more than an attempt to tell this Court that Professor Block does not deserve his day in Court because, given past viewpoints he has expressed, he is the bigot (and, therefore, likely the slavery sympathizer) defendants' Article depicts.

Again, *Price v. Stossel* very astutely observed that such argument (and evidence in support thereof) has no relevance whatsoever when dealing with the question of misquotation. It does, however, attempt to taint the individual– here, Professor Block– as a bad person before the Court and/or the fact-finder by saying, essentially, 'discredit this individual and question his moral character because **some journalist not before the court has said** that **he (Professor Block) has said** things that should make him a pariah in the eyes of the Court.'

The danger of unfair prejudice in allowing the admission of this Times-Picayune article is patent. It would have the same effect as the very article that forms the basis of this action– it will cause this Court and/or the fact-finder to believe that Professor Block is little more than a bigot. Of course, if it was relevant to the elements of the cause of action alleged (and that relevance

---

[12] Fed. R. Evid. 403.

substantially outweighed the danger of prejudice) and it did not constitute inadmissible hearsay, then it would be admissible. But, again, it is in no way relevant to whether defendants misquoted and/or distorted Professor Block's meaning by purporting to convey his stated views on slavery. Thus, on this further alternative ground (Rule 403), the Times-Picayune article and all portions of defendants' argument in their Special Motion to Strike related to same should be stricken from the pleadings and disregarded entirely in this litigation.

## CONCLUSION

Based on the foregoing, Professor Block respectfully submits the Times-Picayune article [Doc. 35-6] submitted in conjunction with defendants' Special Motion to Strike as well as all argument based thereupon (most notably Doc. 35-1 at pp. 4-6) should be stricken from the pleadings and deemed inadmissible for any purpose in this litigation. Undoubtedly, the damage has already been done with respect to the instant Special Motion to Strike, since the Court will have to review the article to determine its admissibility.

However, Professor Block has full faith that this Court is fully capable of separating relevant from irrelevant evidence and not allowing its opinion to be swayed by the latter since the learned members of the federal judiciary attain such status because of their unique ability to remain objective and rule upon the law and *admissible* evidence only. Thus, Professor Block submits this Motion all the same, trusting that bringing to this Court's attention the impropriety of the Times-Picayune article's submission will suffice to erase it from the Court's decision-making process. And, in any event, the argument must be raised so that defendants do not later attempt to place the Times-Picayune article before the jurors, who are not uniquely qualified to ignore irrelevant evidence meant only to stoke bias.

Respectfully submitted,

MAHTOOK & LAFLEUR, LLC


*/s/ Marc J. Mandich*
WARD F. LAFLEUR (#01770)
MARC J. MANDICH (#35402)
600 Jefferson Street, Suite 1000 (70501)
P.O. Box 3089
Lafayette, LA 70502-3605
Telephone:	(337) 266-2189
Facsimile:	(337) 266-2303

**Attorneys for Plaintiff,
WALTER BLOCK**


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has this date been served on all counsel of record in this proceeding by

(   ) Hand Delivery			(   ) Prepaid U.S. Mail

(   ) Facsimile			(   ) Federal Express

( X ) CM/ECF Court Filing systems

Lafayette, Louisiana, this 31st day of May, 2016.

*/s/ Marc J. Mandich*
MARC J. MANDICH