**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

WALTER BLOCK                                        CIVIL ACTION

VERSUS                                              NO. 14-2200

NEW YORK TIMES COMPANY, ET AL.                      SECTION "B"(4)

<u>ORDER AND REASONS</u>

Before the Court is Defendants' "Special Motion to Strike." Rec. Doc. 35. Plaintiff, Walter Block (hereinafter "Block" or "Plaintiff"), filed a Memorandum in Opposition. Rec. Doc. 48. The Court then granted leave for both Plaintiff and Defendants to file supplemental memoranda. Rec. Doc. 53, 55. For the reasons outlined below,

**IT IS ORDERED** that the Motion is **GRANTED.**

I.   <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

This case arises out of an article entitled "Rand Paul's Mixed Inheritance," written by Sam Tanenhaus and Jim Rutenberg and published by The New York Times (collectively "Defendants" or "The New York Times"). The article, published on January 25, 2014, discusses the potential presidential candidacy of Rand Paul and the ideology to which he subscribes—libertarianism. *See* Rec. Doc. 35-4. In examining some of the views of "those in the libertarian orbit," the article twice quotes Plaintiff:

> Some scholars affiliated with the Mises Institute have combined dark biblical prophecy with apocalyptic warnings that the nation is plunging toward economic collapse and cultural

> ruin. Others have championed the Confederacy.
> **One economist, while faulting slavery because
> it was involuntary, suggested in an interview
> that the daily life of the enslaved was "not
> so bad — you pick cotton and sing songs."**
>
>       * * * *
>
> **Walter Block, an economics professor at Loyola
> University in New Orleans who described
> slavery as "not so bad," is also highly
> critical of the Civil Rights Act. "Woolworth's
> had lunchroom counters, and no blacks were
> allowed," he said in a telephone interview.
> "Did they have a right to do that? Yes, they
> did. No one is compelled to associate with
> people against their will."**

Rec. Doc. 35-4 at 2, 9 (emphasis added). On September 23, 2014, Plaintiff filed suit alleging defamation and false light invasion of privacy based on the article's portrayal of him. Rec. Doc. 1. Defendants then moved for dismissal of the claims against them under Louisiana Code of Civil Procedure article 971—Louisiana's anti-SLAPP statute,[1] claiming that Plaintiff could not demonstrate a probability of success on his claims. Rec. Doc. 10. This Court granted that motion, finding that Block could not establish a probability of success on the merits as required by article 971. Rec. Doc. 23. More specifically, this Court found that Block could not establish the element of falsity, which in turn precluded a finding of actual malice. Rec. Doc. 23 at 9. We also determined that the quotations were not defamatory *per se* and that they were

---

[1] *See Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 169 (5th Cir. 2009).

incapable of defamatory meaning. *Id*. at 9-11 Plaintiff appealed that ruling.

The United States Court of Appeals for the Fifth Circuit issued a mandate vacating the judgment and remanding in light of its intervening decision in *Lozovyy v. Kurtz*, 813 F.3d 576 (5th Cir. 2015). In *Lozovyy*, the court held that the "probability of success" standard included in the anti-SLAPP statute "does not permit courts to weigh evidence, assess credibility, or resolve disputed issue of material fact." Thus, the standard is functionally equivalent to the summary judgment standard under Federal Rule of Civil Procedure 56. *Id*. at 586. Because this Court previously "analyzed whether Block established a 'probability of success' on his claim and, in doing so, arguably resolved disputed questions of fact," the Fifth Circuit remanded the matter for consideration of "whether Block has established a genuine dispute of material fact on each element of his claims." Defendants were then ordered to reurge their Special Motion to Strike and to address the issues raised in the Fifth Circuit's mandate. Rec. Doc. 34. That Motion is now before the Court.

## II.  **THE PARTIES' CONTENTIONS**

Defendants aver that Block's complaint is subject to a motion to strike pursuant to Louisiana Code of Civil Procedure article 971. Rec. Doc. 35 at 1. Defendants cite Fifth Circuit case law deeming the article only nominally-procedural, meaning its

substantive provisions apply in this diversity action. *Id.* at 1-2 (citing *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164 (5th Cir. 2009)). Defendants further claim that, under the requirements of *Lozovyy*, Block cannot survive the motion to strike because he cannot establish a genuine issue of fact as to each element of his claims. *Id.* at 2. In particular, Defendants maintain that there are no genuine issues of fact as to defamatory meaning, falsity, or actual malice, with both falsity and actual malice being essential elements of both claims. Rec. Doc. 35 at 2-3. Therefore, Defendants contend that Plaintiff's claims should be dismissed and they should be awarded attorneys' fees and costs. *Id.* at 3.

Block asserts numerous arguments in opposition. First, he claims that when one reads between the lines of the Fifth Circuit's mandate and looks at comments made by the panel during oral argument, it becomes clear that the Fifth Circuit intended to say that "had the proper standard been applied, this case would not have been subject to pretrial dismissal." Rec. Doc. 48 at 2-3. Second, Block maintains that, under the "direct collision" test, article 971 conflicts with Federal Rules of Civil Procedure 12 and 56, meaning it should not be applied in federal court, and Defendant's motion should be dismissed. *Id.* at 10-14. Plaintiff also challenges Defendants' substantive arguments. Block argues that: (1) the quotations are false because the words used do not accurately convey Block's meaning and/or attitude; (2) there are

4

disputed issues of fact as to whether a reasonable reader could conclude the statements are capable of defamatory meaning; and (3) there are genuine issues of fact as to the malice element simply by means of the existence of falsity. *Id.* at 8-9. Alternatively, as to malice, Block contends that discovery is necessary to prove this *mens rea* element. *Id.* at 9. Therefore, Block urges this Court to deny the motion.

In reply, The New York Times initially argues that nothing in the Fifth Circuit's mandate presupposes a result as Block contends. Rec. Doc. 53 at 3. Defendants also claim that Block fails to establish a genuine issue of material fact as to falsity by refusing to consider both quotations in the context of one another and the article as a whole and by using an inapt analogy to a single Ninth Circuit opinion. *Id.* at 2-5. The New York Times further maintains that Block's arguments regarding defamatory meaning and actual malice are insufficient to raise a genuine issue of material fact. *Id.* at 5-10. Finally, Defendants argue that Block waived his arguments concerning the applicability of Article 971 in federal courts as well as any right he may have to pre-dismissal discovery. *Id.* at 10-12.

In his sur-reply memorandum, Block contests Defendants' arguments regarding waiver. First, he maintains that Defendants are mistaken in their assertion that he waived his right to seek discovery under article 971(D). Rec. Doc. 55 at 1-3. Additionally,

Block urges this Court to apply an exception to the waiver doctrine with respect to his direct collision argument. He asserts that "[i]t would be inequitable to dismiss [his] case under a statute that the great weight of Circuit authority is *currently* concluding cannot be applied in the first place." *Id.* at 5 (emphasis in original). Thus, he maintains that this Court should consider his direct collision argument and find article 971 inapplicable in federal court.

### III. <u>DISCUSSION</u>

As an initial matter, this Court will address Block's argument that, under the "direct collision" test, this Court cannot properly apply Article 971 because it conflicts with the Federal Rules of Civil Procedure.

### a. Whether Block May Now Challenge the Applicability of Article 971 in Federal Court

Though Block concedes that the Fifth Circuit deemed this argument waived on appeal, he argues that this Court should apply an exception to the waiver doctrine—at the very least so that he may preserve the issue for any subsequent appeal. Rec. Doc. 55 at 3.

The Fifth Circuit's mandate explicitly states that Block waived this argument. Rec. Doc. 31 at 6. It further states that this Court is to determine whether any genuine issues of material fact exist. To consider an issue deemed waived by the court of

6

appeals and obviously antecedent to the mandated considerations would require this Court to disregard the explicit commands of the Fifth Circuit in violation of the mandate rule, which "provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *U.S. v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) (quoting *U.S. V. Becerra*, 155 F.3d 740, 753 (5th Cir. 1998)). There are, however, three recognized exceptions in this circuit to the law of the case doctrine and the mandate rule: "(1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice." *Id*. (citing *Becerra*, 155 F.3d at 752-53).

While Block argues for the application of exceptions to the waiver rule rather than the mandate rule, his arguments are, for the most part, relevant in this context. First, he claims that there is an intervening change in the law that "has occurred and/or has been occurring throughout this litigation." Rec. Doc. 55 at 5. While Block concedes there is no controlling authority on the issue at this time, he claims the great weight of circuit authority justifies the application of an exception. *Id*. at 5. However, the law in this circuit is clear that only an intervening change of law by a *controlling authority* is sufficient to justify

disregarding an explicit command from the Fifth Circuit on remand. *Matthews*, 312 F.3d at 657. Therefore, that argument lacks merit.

Block also claims that an otherwise waived issue should be reconsidered when it is antecedent and ultimately dispositive of the dispute before the court. Rec. Doc. 55 at 5 (citing *Crocker Piedmont Aviation, Inc.*, 49 F.3d 735, 739-40 (D.C. Cir. 1995)). This argument also lacks merit for several reasons. First, as Plaintiff is readily aware, the holdings of the D.C. Circuit are not binding on this Court, and, under the Fifth Circuit's stated exceptions to the mandate rule, the cited exception is not applicable. Block also ignores the portion of *Crocker* stating that the exception is typically exercised only in "exceptional circumstances, where injustice might otherwise result." *Crocker*, 49 F.3d at 740 (quoting *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 717 (D.C. Cir. 1986)). Here, no such exceptional circumstances exist because even if this Court were to consider the direct collision argument, and presuming for the sake of argument that it found Article 971 inapplicable, the same result would necessarily ensue on summary judgment. Accordingly, there is no injustice stemming from this Court's decision to follow the Fifth Circuit's mandate. Finally, Block has not, and cannot, demonstrate that the Fifth Circuit's decision was clearly erroneous. *See Matthews*, 312 F.3d at 657. As no exception applies in this case, the Court must

implement the letter and spirit of the Fifth Circuit's mandate. *See id.*

### b. Whether Block Can Establish a Probability of Success

Under Louisiana Code of Civil Procedure article 971, a defendant may seek dismissal of a cause of action through a special motion to strike so long as the relevant claims arise from an act of the defendant in furtherance of his or her right to free speech in connection with a public issue. "Ruling on a special motion to strike under Article 971 involves a 'burden-shifting analysis for weeding out frivolous claims.'" *Lozovyy*, 813 F.3d at 582 (quoting *Henry v. Lake Charles Am. Press*, 566 F.3d 164, 170 (5th Cir. 2009)). Once the defendant makes a prima facie showing that Article 971 applies to the speech at issue, the burden shifts to the plaintiff to establish a "probability of success" on his claims. *Id*. In *Lozovyy*, the Fifth Circuit held for the first time that, akin to the summary judgment standard, Article 971's "probability of success" standard does not permit courts to "weigh evidence, assess credibility, or resolve disputed issues of material fact." 813 F.3d at 586. Pursuant to the decision in *Lozovyy*, the court of appeals remanded this matter to "consider whether Block has established a genuine dispute of material fact on each element of his claims." Rec. Doc. 31 at 4.

### 1. The defamation claim

Under Louisiana law, a successful defamation claim must establish the following elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Wood v. Del Giorno*, 2006-1612, p. 4 (La. App. 4 Cir. 12/19/07); 974 So. 2d 95, 98 (citing *Trentecosta v. Beck*, 96-2388, p. 10 (La. 10/21/97); 703 So. 2d 552, 559). The fault requirement turns upon the presence of malice, actual or implied. *Id.*; *Maggio v. Liztech Jewelry*, 912 F. Supp. 216, 219 (E.D. La. 1996). However, a public figure "cannot recover damages for a defamatory falsehood without clear and convincing proof that the false statement was made with 'actual malice.'" *Tarpley v. Colfax Chronicle*, 650 So. 2d 738, 740 (La. 1995). If any single element is lacking, the cause of action fails. *Wood*, 974 So. 2d at 98. The elements at issue here are falsity, defamatory statement, and actual malice.

### A. Whether the statements attributed to Block are false

Block does not argue that he never said the words included within The New York Times's quotations. *See* Rec. Doc. 48. Instead, he claims that the context in which the newspaper used his words rendered the quotations false by implying he was a racist and a supporter of slavery. Rec. Doc. 48 at 27. Block's principal complaint is that the second quotation states only that he

10

"described slavery as not so bad" without referencing the conditional predicate—so long as it was voluntary. *See id.* at 23-24. More specifically, Block maintains that he "has always denounced actual slavery, openly and vociferously, because it was implemented by force," and that the language he used, which was later quoted in the article, "serve[d] merely to amplify his point that slavery was evil because the slaves were forced into conditions that, *if voluntary*, would otherwise be acceptable." *Id.* at 25. However, he submits that the way The New York Times quoted him does not accurately reflect this view for several reasons.

Block first points out that the second quotation, placed roughly eight pages and fifty-three paragraphs after the first, does not include his conditional predicate but only says that he described slavery as "not so bad." He describes that quotation as a "horribly inaccurate, unqualified statement" that makes him appear to support slavery unconditionally. *Id.* at 25-26. Further, Block avers that the initial quotation does not serve to cure or remove the sting from the second quotation because it does not mention him by name. *Id.* at 26. Finally, he claims that the first quotation's strategic positioning demonstrates Defendant's intent to make him appear to be a racist and a supporter of slavery. *Id.* at 27.

In support of his contention that the context and placement of a quotations can render it false, Block relies primarily on two

cases: *Sassone v. Elder*, 626 So. 2d 345 (La. 1993), and *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496 (1991).[2] *See* Rec. Doc. 48 at 21-28. In *Sassone*, though, the Supreme Court of Louisiana does not purport to address the issue of falsity. 626 So. 2d at 352 ("we do not reach the issues of whether the statements were false or whether plaintiffs were required to prove actual malice."). The case does not discuss the proper analysis for determining whether quotations have become so distorted as to be untrue. *See id*. *Sassone* is therefore not instructive as to the falsity element. With respect to *Masson*, Plaintiff points to a portion of the opinion discussing falsity in the context of fabricated quotations. Rec. Doc. 48 at 22 n. 65. That portion of the opinion, though, is not relevant here because we are not dealing with fabricated quotations. The New York Times did not make the quotations up; Block admits that he used those words. The issue here is one of alteration. In particular, the second passage's use of the "not so bad" quotation that does not include the conditional

---

[2] The Court also notes that Block relies upon an analogy to the Ninth Circuit case of *Price v. Stossel*, 620 F. 3d 992 (9th Cir. 2010). However, the Court finds that analogy inapt and unpersuasive. In *Price*, the defendant used quotations of the plaintiff's actual words but, through context, changed the subject of the plaintiff's original sermon. "In the quote, as misrepresented by the Clip, Price is speaking about himself, whereas in the context of the actual sermon, Price is telling a story about someone entirely different." *Id*. at 1003. Here, however, the subject was the same in the quotation and in Block's "true" views expressed in his own words. In the quotation, Block was speaking about aspects of actual slavery, such as picking cotton and eating gruel. Likewise, in his own views expressed in his own words, he considers those same aspects of actual slavery as not so bad. Consequently, *Price* is not persuasive authority, let alone controlling.

predicate in the same sentence. With respect to such alteration, *Masson* instructs that "[i]f an author alters a speaker's words but effects no material change in meaning, including any meaning conveyed by the manner or fact of expression, the speaker suffers no injury to reputation that is compensable as defamation." *Masson*, 501 U.S. at 516. Accordingly, the issue before this Court is whether the New York Times's alterations of, and portrayal of, Block's actual statements rendered them false.

In *Masson*, the Supreme Court of the United States discussed the proper falsity analysis with regard to altered quotations in the context of determining falsity as a predicate to actual malice. *Id*. at 516-18. There, the Court declared:

> Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the libelous charge be justified. Put another way, *the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.*

501 U.S. 496, 517 (1991) (emphasis added and internal quotations marks and citations omitted). Here, Block submits to the Court that he denounces slavery "because it was implemented by force" and that his point during the interview was that "slavery was evil because the slaves were forced into conditions that, *if voluntary*, would otherwise be acceptable." Rec. Doc. 48 at 25. He maintains that both of the relevant passages are false and defamatory in their own right, so the Court will address each in turn.

13

The first quotation closely mirrors Block's stated view: "One economist, while faulting slavery because it was involuntary, suggested in an interview that the daily life of the enslaved was "not so bad — you pick cotton and sing songs." Block complains that the first passage is false because, when considered in the context of the surrounding paragraphs, it tends to give readers the false impression that Block and the "extremist-libertarians at the Mises Institute are nothing more than latent racists and supporters of slavery." Rec. Doc. 48 at 27. However, Block does not articulate any meaningful difference between the view expressed in the first passage and the view he actually holds. Any unintended implication which arises is therefore not the result of any alteration, but the result of the manner in which Block expressed his views to The New York Times. Accordingly, the first passage is not a false representation of Block's views.

The second quotation identifies Block as an economics professor who "described slavery as not so bad." In isolation, one could construe that quotation as more than a mere minor inaccuracy. However, under Louisiana law, an article must be read as a whole and the challenged statements viewed in that context. *See Collins v. Clayton*, No. 13-1840, p. 5 (La. App. 1 Cir. 05/07/2012); 2014 WL 2711805 ("After reading the article as a whole, and in context as we must . . . ."). This, by definition, means that each passage quoting Block must necessarily be considered in light of the other

passage. Viewing the second quotation in light of the remaining article, particularly its clear reference to the first quotation, any inaccuracy is minor. *See Bressler v. Fortune Magazine, a Div. of Time, Inc.*, 971 F.2d 1226 (6th Cir. 1992) ("the reviewing court is to determine whether [the] *actual statements* are 'minor inaccuracies' within the context of the relevant portions of the entire article such that they do not render the *actual substance of those portions of the article* false.").

The quotation states that Block described slavery as not so bad, when in fact, Block described a number of facets of slavery (in fact, all aspects of slavery other than its involuntary nature) as not so bad—in particular, picking cotton, singing songs, and eating gruel. *See* Rec. Doc. 48 at 25-26. The alteration with respect to the second quotation is minor because it clearly references the first quotation, which also uses the "not so bad" language, where Block's stated views are portrayed with the conditional predicate. Moreover, the sentences immediately following the second "not so bad" quotation discuss Block's views on free association with respect to the Civil Rights Act, which again reminds the reader of the conditional predicate to his "not so bad" comment. Block's claim that the second passage is hidden and not clarified by the original passage is unsupportable.

Furthermore, his claim that the comments should not be read together in any event is belied by his own contentions.[3]

To raise a genuine issue of fact as to falsity Block would have to present evidence tending to show that the article as written had a different effect on the mind of the reader from that which the pleaded truth would have produced. *See Masson*, 501 U.S. at 517 ("the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced."). Block's evidence submitted here is only probative as to how a few individuals perceived the article as written. Block submits an affidavit in which he claims that, as a result of the article: (1) he has been subjected to personal attacks on his professionalism, character, and scholarship; (2) that his colleagues have called for his condemnation; (3) that he has been threatened with physical harm; and (4) that two young men on his campus threatened him for saying "slavery was ok." Rec. Doc. 48-2 at 3. Further, he submits a letter sent by Kevin Wildes, President of Loyola University, to the school newspaper chastising him for "claim[ing] that chattel slavery 'was

---

[3] If the passages are not to be read together, then the first passage could not be defamatory as to Plaintiff because it does not reference him by name. Nonetheless, Block's brief argues that the strategic positioning of the first quotation implies he is a racist and supporter of slavery based on the surrounding sentences. Rec. Doc. 48 at 27. In making this claim, he is necessarily reading the first passage in conjunction with the second—the only portion of the entire article that references his name. Block cannot on one hand argue that the second passage should not be read in the context of the first, while on the other argue that that the first should be read in the context of the second.

not so bad.'" Rec. Doc. 48-2 at 40-41.  This evidence goes to show the effect that the article as written had on a handful of individuals. Finding that this evidence demonstrates a genuine issue of fact as to falsity would require this Court to rely on the unsubstantiated presumption that Plaintiff's views as stated in his own words would not have the same effect on readers.

Even viewing the evidence in the light most favorable to Plaintiff, no rational jury could find that it establishes that his pleaded truth would produce a different effect on the minds of the readers. He has no evidence of that. In fact, Block concedes that any use of the word slavery that does not condemn it as "pure evil" would "ignite fury" in readers. Rec. Doc. 48 at 26-27. Nevertheless, he chose to use the word slavery in just that way— without stating that it was pure evil. He claims that his point was that slavery was evil, but he does not claim to have used that word, and was thus apparently aware of the reaction his words would trigger.[4] In essence then, he effectively admits that his views,

---

[4] Furthermore, in a blog post that Defendants allege Block posted after the article's publication (which he does not contest), Block relays his views in his own words without describing slavery as pure evil:

> I published these exact words on 2/25/13 long before being interviewed for your story . . . : "Free Association is an important aspect of liberty. It is crucial. Indeed, its lack was the major problem with slavery. The slaves could not quit. They were forced to 'associate' with their masters when they would have vastly preferred not to do so. Otherwise, slavery wasn't so bad. You could pick cotton, sing songs, be fed nice gruel, etc. The only real problem was that this relationship was compulsory."

no matter their context, would have had the same controversial effect on readers. *Id*. Consequently, he cannot show that the responses he received are different from that which he would have received had The New York Times not made the structural choices of which Block complains.[5] He therefore has failed to establish a genuine issue of material fact as to falsity under *Masson*.

### B. Whether the statements are defamatory

In Louisiana, a statement can either qualify as defamatory *per se* or as susceptible of defamatory meaning when taken in context. *Wood*, 974 So. 2d at 99. "Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory *per se*." *Id*. Further, it is well-established that "[t]he question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court." *Costello v. Hardy*, 2003-1146, p. 13 (La. 1/21/04); 864 So. 2d 129, 140 (citing *Sassone*, 626 So. 2d at 352). "It is for the court in the first instance to determine whether the words are reasonably capable of a particular interpretation, or whether they are necessarily so; it is then for the jury to say whether they

---

[5] The only relevant evidence on this matter is that presented by Defendants: that Block has made similar statements in the past and that he is known for taking stances viewed by others as controversial. Rec. Doc. 35-1 at 4-9.

18

were in fact so understood." WILLIAM L. PROSSER, LAW OF TORTS 647-48 (4th ed. 1971).

While acknowledging some of these principles of law, Block maintains that genuine issues of fact preclude this Court from finding, as it did originally, that the statements were not defamatory *per se*. Rec. Doc. 48 at 19-20. Furthermore, Block argues that *Sassone* directly contravenes this Court's prior conclusion that the passages are not defamatory *per se*. Rec. Doc. 48 at 17. He argues that *Sassone* demonstrates that pre-contextual quotation is defamatory *per se*. He also claims that *Sassone's* discussion of quotations make his "reading of the law unassailable." Rec. Doc. 48 at 18. However, in making these claims, Block fails to cite to any particular portion of *Sassone*. *Id*. at 17-18. In fact, he provides no citations whatsoever to support these claims. *Id*. More importantly, *Sassone* does not, nor does it purport to, address defamation *per se* or statements that are defamatory on their face. *See Sassone*, 626 So. 2d at 353 (noting that the plaintiffs "in effect claim defamation by innuendo" and stating that "Unless implications are considered, the critic's statement is not defamatory."). By its own admission, the *Sassone* court discussed the quotations there in the context of defamation by implication. *Id*. Block thus repeatedly references a cases that does not lend support to his position. Again, this Court makes the legal finding,

19

which does not rest upon any disputed issues of material fact, that the passages at issue here are not defamatory *per se*.

The statements in question do not expressly or implicitly accuse Block of criminal conduct, nor does Block claim as much. *See Wood*, 974 So. 2d at 99. Moreover, even if the passages had the effect of injuring Plaintiff's professional standing, the very nature of the words do not attack Block's personal or professional reputation. According to Block, "[t]hat branding someone a person who considers forced slavery 'not so bad' tends to harm that person's reputation without resort to extrinsic facts (i.e., is defamatory *per se*) is so self-evident it requires no further justification." Rec. Doc. 48 at 20. However, the article, on its face, does not brand Block as someone who considers slavery not so bad. Instead, from an objective standpoint and considered as whole, *see Collins,* 2014 WL 2711805 at *5, it identifies Block as an economics professor who faults slavery for being involuntary but has described the other aspects of slavery as not so bad. Block is incorrect that such a finding necessarily requires this Court to resolve disputed issues of material fact. This Court accepts as credible Block's evidence that some readers derived other meaning from the article, but that goes to whether the article had a defamatory implication, not whether it was defamatory on its face. The article is not defamatory *per se*.

Block's argument, while claiming not to do so, rests entirely on the premise that The New York Times's article implies he is a racist and supporter of slavery. This Court need not decide whether that is so because it is undisputed in this case that the article concerns both public figures and public affairs. *See* Rec. Doc. 48. And "[w]here public [figures] and public affairs are concerned, there can be no libel by innuendo." *Schaefer v. Lynch*, 406 So. 2d 185. Accordingly, the article is not defamatory.

### C. Whether Defendants demonstrated actual malice

In cases such as this that involve statements about a public figure where constitutional limitations are implicated, "a plaintiff must prove actual malice, *i.e.*, that the defendant either knew the statement was false or acted with reckless disregard for the truth." *Costello v. Hardy*, 2003-1145, p.14 (La. 1/21/04); 864 So. 2d 129, 140-41. In *Masson*, the Supreme Court also concluded that "a deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity . . . unless the alteration results in a material change in the meaning conveyed by the statement." 501 U.S. at 517. This Court has already found that the alterations did not result in a material change in meaning. Thus, there can be no knowledge of falsity. The Court also finds that there was no reckless disregard for the truth because Defendants accurately reproduced Block's views. Plaintiff has no evidence to the contrary and providing discovery for that purpose

would be futile due to Plaintiff's failure to raise fact issues as to falsity and defamatory meaning. Because this Court finds that Plaintiff has failed to raise a fact issue as to the falsity, defamatory statement, and malice elements, the defamation claim must be dismissed.

### 2. The false light claim

The three elements necessary for proving a false light invasion of privacy claim are a privacy interest, falsity, and unreasonable conduct. *Simpson v. Perry*, 2013-0116, p. 3-4 (La. App. 1 Cir. 7/14/04); 887 So. 2d 14, 17 (citing *Perere v. La. Television Broad. Corp.*, 2000-1656, p. 3 (La. App. 1 Cir. 9/28/01); 812 So. 2d 673, 676). As this Court finds there is no genuine issue of fact as to falsity or actual malice (an analog to unreasonable conduct), the false light claim must also be dismissed.

### c. Defendants' request for Attorneys' Fees

The New York Times claims that, because Block cannot carry his burden, it is entitled to attorneys' fees and costs, reserving its right to seek attorneys' fees and costs incurred both pre- and post-appeal. As before, this Court will refer the forthcoming motion for attorneys' fees to the Magistrate Judge.

### IV.   CONCLUSION

Without weighing evidence, assessing credibility, or resolving disputed issues of fact, this Court concludes there is no genuine dispute as to falsity, defamatory statement, or actual

malice, meaning Block cannot demonstrate a probability of success on the merits on any of his claims. Accordingly,

**IT IS ORDERED** that the motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants have thirty (30) days from the date of this Order and Reasons to submit their motion for attorneys' fees.

**IT IS FURTHER ORDERED** that said motion for attorneys' fees be **REFERRED** to the Magistrate Judge. The Magistrate Judge will conduct a hearing on the motion, including an evidentiary one if necessary. Thereafter, a Report and Recommendation will be filed into the record.

New Orleans, Louisiana, this 2nd day of August, 2016.


SENIOR UNITED STATES DISTRICT JUDGE